1999 ND 204

**William BARNES, M.D., Plaintiff and Appellant,**

v.

**ST. JOSEPH'S HOSPITAL, Defendant and Appellee.**

**No. 990072.**

Supreme Court of North Dakota.

Oct. 25, 1999.

William E. Bergman (argued) and Christopher A. Payne (on brief), Cracken, Harkey & Payne, Dallas, TX, and John C. Skowronek (on brief), Lamont & Skowronek, Minot, ND, for plaintiff and appellant.

Monte L. Rogneby, Kapsner & Oliver, Bismarck, ND, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] William Barnes appeals from a summary judgment dismissing his action against St. Joseph's Hospital ("the Hospital") and awarding damages to the Hospital on its counterclaim. We affirm.

I

[¶ 2] Barnes was practicing as an otolaryngologist in California when the Hospital recruited him to move his practice to North Dakota. On March 1, 1992, the parties entered into a "Hospital and Physician Agreement" whereby the Hospital provided substantial financial incentives to Barnes to relocate to Minot. The parties agree Barnes was to set up his own independent practice, and was not an employee of the Hospital. The agreement was effective for a two-year term commencing on June 15, 1992.

[¶ 3] Under the terms of the agreement, the Hospital paid the costs of establishing Barnes's practice and all operational expenses of his office, provided a substantial income guarantee for Barnes, and provided a $40,000 incentive loan, characterized

by the parties as a "signing bonus." The agreement treated the start-up costs, operational expenses, and income guarantee paid by the Hospital as a loan to Barnes, with a portion of the loan to be forgiven each year Barnes remained in practice in Minot. Upon completion of six years of practice, the loan would be entirely forgiven. Under a supplemental agreement, repayment of the $40,000 incentive loan was similarly to be forgiven at the rate of 20 percent for each year Barnes remained in practice, and would be entirely forgiven after five years.

[¶ 4] The parties also agreed the Hospital would provide office space for Barnes at no cost during the two-year term of the agreement. The parties subsequently agreed the Hospital would continue to provide office space rent free until August 1, 1995.

[¶ 5] On February 8, 1993, the Hospital and Medical Arts Clinic, P.C. ("the Clinic") entered into an agreement' whereby the Hospital would provide funds to assist in the Clinic's recruitment of physicians to Minot. The Hospital agreed to reimburse the Clinic's costs of recruiting physicians, up to a total of $2,000,000, during the ten-year term of the agreement. The Hospital also agreed to provide income guarantees and start-up costs, limited to $50,000 per physician, in the form of loans to the individual physicians. The agreement contemplated recruitment of eight doctors the first year and approximately five each year thereafter. Under the agreement, the Hospital provided funds but did not actively participate in recruitment or decisions about which specialties would be recruited.

[¶ 6] In 1994 the Clinic decided to hire an otolaryngologist. Barnes applied for the position, but the Clinic instead hired Dr. Lawrence Hnatuk. Dr. Hnatuk began practicing with the Clinic in 1995. As required by its 1993 contract, the Hospital reimbursed the Clinic its costs for recruiting Dr. Hnatuk and provided funds for a loan to Dr. Hnatuk. Barnes asserts that, once Dr. Hnatuk began practicing at the Clinic, other physicians at the Clinic stopped referring patients to him and his practice was significantly affected.

[¶ 7] On August 1, 1995, the agreement for rent-free office space ended and the Hospital began billing Barnes for rent on a monthly basis. Barnes failed to pay any rent. On March 6, 1996, the Hospital sent a letter to Barnes requesting that he move his office out of the Hospital by June 1, 1996, and offering to help him find other suitable space. On May 23, 1996, Barnes closed his practice in Minot. He moved to Grand Forks and enrolled in law school.

[¶ 8] In April 1996, prior to closing his practice, Barnes brought this action against the Hospital asserting a tort claim for breach of an implied covenant of good faith and fair dealing under the "Hospital and Physician Agreement."[1] The Hospital filed a counterclaim for the amounts remaining due on its loans to Barnes under the agreement. The district court granted summary judgment dismissing Barnes's claim and awarding the Hospital damages and interest in the amount of $299,859.53 on its counterclaim. Barnes appealed.

II

[¶ 9] We recently outlined the standards guiding our review of summary judgments in *Strom–Sell v. Council for Concerned Citizens, Inc.*, 1999 ND 132, ¶ 16, 597 N.W.2d 414 (citation omitted):

> Summary judgment under N.D.R.Civ.P. 56 is a procedural device for promptly and expeditiously disposing of a controversy without a trial if there is no genuine issue of material fact, or if the law is such that resolution of the factual disputes will not alter the result. We have outlined the duty of a party opposing a summary judgment motion:

1. Barnes alleged several other causes of action in his complaint. Those claims were dismissed on summary judgment and are not at issue on appeal.

Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

*Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991) (citations omitted). Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of her claim and on which she will bear the burden of proof at trial.

### III

■ [¶ 10] Barnes contends the district court erred in dismissing his tort claim for breach of an implied covenant of good faith and fair dealing. The district court concluded that North Dakota has not recognized such an action in cases involving commercial contracts and that Barnes had failed to raise a genuine issue of material fact on bad faith. We need not decide whether such a tort action should be recognized in cases involving commercial contracts because we conclude, assuming such

an action were available, Barnes has failed to raise an issue of material fact that the Hospital failed to act in good faith. *See Hummel v. Mid Dakota Clinic, P.C.*, 526 N.W.2d 704, 710 (N.D.1995).

■ [¶ 11] Barnes asserts the Hospital acted in bad faith when it "actively participated" in recruiting Dr. Hnatuk to the Clinic, thereby making it "financially impossible" for Barnes to continue practicing in Minot. Barnes's argument is factually and logically flawed. Barnes conceded in his brief that the Clinic, not the Hospital, "determined who would be recruited." There is no evidence demonstrating the Hospital "actively participated" in the recruitment of Dr. Hnatuk. Rather, the evidence shows only that the Hospital entered into a broad, general agreement with the Clinic to financially assist in the recruitment of dozens of physicians over a number of years. There is no evidence showing the Hospital participated in the recruitment process beyond performing its purely financial obligations under the agreement with the Clinic.

[¶ 12] Barnes points to no evidence suggesting the parties agreed, either expressly or impliedly, that Barnes would have a monopoly on otolaryngology practice, or that the Hospital was precluded from encouraging and assisting in recruitment of other otolaryngologists to Minot. Barnes has failed to present any evidence that the Hospital participated in the recruitment of Dr. Hnatuk beyond entering into and performing its financial obligations under the broad, general contract with the Clinic. We conclude that, as a matter of law, the evidence of the Hospital's participation in the recruitment of Dr. Hnatuk fails to raise a genuine issue of material fact on bad faith.

■ [¶ 13] Barnes also asserts the Hospital acted in bad faith when it "wrongfully evicted" him from his office space. The parties had agreed the Hospital would provide office space for Barnes's practice at no cost until August 1, 1995. The Hospital

began billing Barnes for rent for the office space after that date, but Barnes refused to pay. Finally, in March 1996, the Hospital sent a letter to Barnes requesting that he move his office out of the Hospital by June 1, 1996, and offering to assist him in finding suitable office space. Barnes asserts this conduct violated the Hospital's duty to perform its contractual obligations in good faith.

[¶ 14] The duty to act in good faith "does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions," nor does the duty of good faith "inject substantive terms into the parties' contract." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo.Ct.App.1994); *see, e.g., General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041–42 (6th Cir.1990); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo.1995); *Idaho First National Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 824 P.2d 841, 863 (1991); *East Penn Sanitation, Inc. v. Grinnell Haulers, Inc.*, 294 N.J.Super. 158, 682 A.2d 1207, 1213 (App.Div.1996); *Badgett v. Security State Bank*, 116 Wash.2d 563, 807 P.2d 356, 360 (1991). Barnes and the Hospital expressly agreed Barnes could occupy office space in the Hospital rent-free only until August 1, 1995. Barnes argues the Hospital's duty of good faith required it to continue to provide rent-free office space after that date. However, imposing such a duty would constitute a material change in the terms of the parties' agreement, and would require the Hospital to assume obligations which vary or contradict the contract's express terms. Furthermore, Barnes's argument that the Hospital acted in bad faith when it asked him to move his office after he had failed to pay rent for over seven months is ludicrous.

[¶ 15] We conclude Barnes has failed to raise an issue of material fact on lack of good faith and the district court did not err in granting summary judgment dismissing the tort claim for breach of the duty of good faith and fair dealing.

## IV

■■ [¶ 16] Barnes asserts the district court erred in granting the Hospital's motion for summary judgment on its counterclaim because the Hospital's actions made it impossible for him to perform the contract. This Court has recognized that each party to a contract impliedly agrees not to prevent the other party from performing and not to render performance impossible. *See Cavalier County Memorial Hospital Ass'n v. Kartes*, 343 N.W.2d 781, 784 (N.D.1984); *Ireland v. Charlesworth*, 98 N.W.2d 224, 233 (N.D.1959). If one party prevents the other's performance, it excuses the performance and provides a defense in a suit for breach by such nonperformance.[2] *See Ireland* at 233.

[¶ 17] Barnes asserts *Kartes* is directly on point and dispositive. In *Kartes*, the Hospital Association loaned money to Kartes to allow him to complete his nurse practitioner degree. The parties' agreement provided the loan would be forgiven if Kartes became a nurse practitioner and accepted employment with one of the Hospital Association's affiliated clinics. Kartes completed his education and notified the Hospital Association he was ready to begin work. The Hospital Association refused to employ him and sued for the amount due on the loan. This Court held Kartes did not have to repay the loan:

---

**2.** This doctrine appears to be very similar to Barnes's claim for breach of an implied covenant of good faith and fair dealing, but the application and effect of the two doctrines are quite different. In *Kartes,* conduct which prevents performance may be the basis for a defense to an action for breach. Breach of an implied covenant of good faith and fair dealing, on the other hand gives rise not to a defense but to an affirmative claim for relief in tort or contract.

[W]e conclude that Kartes complied with the contract when he successfully completed his training and, in effect, tendered his services to the Hospital Association. That neither the clinics nor hospital accepted his employment should not be held against him.

The Hospital Association's failure to make such employment available prevented Kartes from accepting employment. There is an implied condition of every contract not to prevent the other party from performing and not to render performance impossible.

*Kartes*, 343 N.W.2d at 784.

[¶ 18] Barnes asserts the Hospital's conduct in this case similarly rendered his performance impossible:

> The Hospital exerted its considerable influence in the community to prevent Dr. Barnes from practicing and, as a result, Dr. Barnes was unable to take advantage of the contractual provision obligating the Hospital to forgive the loans. In light of the Hospital's actions, it is inequitable and unjust to force Dr. Barnes to pay back the loans to the Hospital.
>
> . . . .
>
> In the instant action, the summary judgment evidence, at the very least, created a fact issue as to whether the Hospital's actions in evicting Dr. Barnes from his existing office space and denying him access to other office space conducive to maintaining his practice, eliminating his referral base, and bringing another otolaryngologist into an already saturated market amounted to a breach by the Hospital of its implied duties under its contract with Dr. Barnes. Specifically, it is a question of fact whether the actions taken by the Hospital either prevented Dr. Barnes from conducting his practice in Minot, or rendered it impossible for Dr. Barnes to conduct his practice for a sufficient period of time to enable him to invoke the Hospital's contractual obligation to forgive the loans.

There is no evidence in this record to support Barnes's conclusory assertion that the Hospital "exerted its considerable influence in the community to prevent" him from practicing. Nor is there any evidence the Hospital had an active role in eliminating his referral base or in the decision to bring another otolaryngologist to Minot. Barnes's unsupported assertion that the Hospital had a duty to continue to provide rent-free office space after the expiration of the expressly agreed period, and that its failure to do so wrongfully prevented him from performing the contract, is frivolous.

[¶ 19] In *Kartes*, the Hospital Association wholly controlled Kartes's ability to perform the contract and directly rendered performance impossible by refusing to employ him as contemplated under the contract. *See Kartes*, 343 N.W.2d at 784. The evidence in this case, at most, creates an inference of only an indirect, remote connection between the Hospital's conduct and Barnes's failure to perform the contract. We conclude, as a matter of law, the Hospital's conduct did not render performance by Barnes impossible and that Barnes has failed to raise a genuine issue of material fact on this issue sufficient to preclude summary judgment on the Hospital's counterclaim.

## V

[¶ 20] The judgment is affirmed.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DALE V. SANDSTROM, BRUCE E. BOHLMAN, D.J., concur.

[¶ 22] BRUCE E. BOHLMAN, D. J., sitting in place of KAPSNER, J., disqualified.