2015 ND 195

Phyllis YESEL and Gloria Van Dyke,
Plaintiffs, Appellants, and Cross–
Appellees

v.

Kristian BRANDON, Olaf Brandon,
Carl Forberg, Magnhild A. Olson,
Ronnaug T. Olson, Marit T. Hosaroy-
gard, Ola T. Aule, Tina T. Haugen,
Gudrun T. Teigen, and Kristen Tofte;
the Unknown heirs, devisees, and leg-
atees of Kristian Brandon, Olaf Bran-
don, Carl Forberg, Magnhild A. Olson,
Ronnaug T. Olson, Marit T. Hosaroy-
gard, Ola T. Aule, Tina T. Haugen,
Gudrun T. Teigen, and Kristen Tofte;
and all other persons unknown claim-
ing any estate or interest in or lien or
encumbrance upon the property de-
scribed in the Complaint, whether as
heirs, legatees, or personal representa-
tive of any of the above-named per-
sons who may be deceased or under
any title or interest, Defendants and
Appellees

Christian Tiegen, Appellee
and Cross–Appellant.

Nos. 20140186, 20140187.

Supreme Court of North Dakota.

Aug. 6, 2015.

Jordon J. Evert, Williston, N.D., for plaintiffs, appellants, and cross-appellees.

Theodore D. Standage, Sheridan, WY, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Phyllis Yesel and Gloria Van Dyke ("Yesel") appeal from a summary judgment concluding the abandoned mineral statutes do not apply to royalty interests, and alternatively, if the statutes apply to royalty interests, the royalty interests at issue here were not abandoned. Christian Teigen cross-appeals from a judgment denying his motion to file a counterclaim and motion for attorneys' fees. We affirm in part, reverse in part, and remand, concluding the mineral interests related to the royalty interests at issue in this case were used, and the district court misapplied the law in denying Teigen's motion to file a counterclaim.

I

[¶ 2] Yesel is the surface owner of the following real property located in McKenzie County:

*Township 153 North, Range 96 West*
Section 25: W½NW¼
Section 26: E½NE¼, NE¼SE¼

Teigen is an heir to the named defendants ("Brandon defendants"), who owned non-participating royalty interests in the minerals in and under Yesel's real property. Yesel published a notice of lapse of mineral interest in the McKenzie County Farmer for each of the Section 25 and Section 26 properties asserting Yesel succeeded to the ownership of the Brandon defendants' royalty interests in the property.

[¶ 3] In September 2011 ("first action") and April 2012 ("second action"), Yesel sued to quiet title to the Brandon defendants' royalty interests, claiming the interests were abandoned because they had not been used under the abandoned mineral statutes for more than 20 years before the first publication of the notice of lapse. The actions involved the same facts and parties; the only difference was the properties involved in each case. Yesel was granted a default judgment in the first action, but the judgment was vacated after Teigen answered in the second action. Teigen's answer alleged the Brandon defendants' royalty interests were used under the abandoned mineral statutes because the mineral interests related to the royalty interests in and under the subject property had been leased within the last 20 years, were subject to a pooling order issued from the North Dakota Industrial Commission, and an oil well had been spud and was producing.

[¶ 4] Teigen moved for summary judgment, arguing the abandoned mineral statutes do not apply to royalty interests. Teigen also argued that even if the abandoned mineral statutes apply to royalty interests, the royalty interests were not abandoned because the mineral interests related to the royalty interests were being used under the statutes. After a hearing, the district court granted Teigen summary judgment in May 2014.

[¶ 5] Approximately two weeks after Teigen was granted summary judgment, he moved to file counterclaims against Yesel, alleging unjust enrichment, conversion, slander of title, and negligence. The counterclaims pertained to royalty payments Yesel allegedly received attributable to the Brandon defendants' royalty interests. Teigen claimed he received the information regarding the royalty payments on the same day he moved to file the counterclaims. Teigen initially requested the royalty payment information from Yesel in May 2013. Teigen then moved for an or-

der to compel discovery in August 2013, arguing the information he received from Yesel was incomplete, and more complete information was needed to determine whether any counterclaims could be asserted against Yesel. The discovery issues were also discussed at the summary judgment hearing in March 2014, where Teigen indicated he was still seeking the royalty payment information. In addition to his motion to file a counterclaim, Teigen moved for attorneys' fees alleging Yesel's quiet title actions were frivolous and made in bad faith. The court denied the motions, concluding Teigen should have asserted his counterclaims when he answered Yesel's complaint in the second action, and the quiet title actions were not frivolous or made in bad faith.

## II

### A

[¶ 6] In the district court proceedings, Yesel challenged whether Teigen had standing to defend this action. In moving to vacate the default judgment entered in the first action, Teigen recorded two statements of claim of mineral interest and filed an affidavit stating he is an heir of the Brandon defendants. The district court concluded Teigen's affidavit was sufficient to establish his standing as an heir. Yesel has not challenged Teigen's standing on appeal, and for purposes of this appeal, we assume Teigen has standing as an heir to defend this action.

### B

[¶ 7] Yesel argues the district court erred in granting Teigen summary judgment. This Court's standards governing summary judgment under N.D.R.Civ.P. 56 are well-established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Rickert v. Dakota Sanitation Plus, Inc.*, 2012 ND 37, ¶ 8, 812 N.W.2d 413 (quoting *Richard v. Washburn Pub. Sch.*, 2011 ND 240, ¶ 9, 809 N.W.2d 288).

[¶ 8] Yesel argues the abandoned mineral statutes in N.D.C.C. ch. 38–18.1 apply to royalty interests. Specifically, Yesel argues a royalty interest is included in the definition of a "mineral interest" under the plain language of N.D.C.C. § 38–18.1–01. The district court concluded N.D.C.C. ch. 38–18.1 does not apply to royalty interests. The court alternatively concluded that if a royalty interest is a "mineral interest" under N.D.C.C. § 38–18.1–01, the interest was used during the 20–year period preceding publication of the notice of lapse. We conclude the mineral interests related to the royalty interests at issue here were used during the 20–year period preceding publication of

the notice of lapse, and find it unnecessary to address whether the abandoned mineral statutes apply to royalty interests.

[¶ 9] Under N.D.C.C. § 38–18.1–02, any mineral interest unused for 20 years preceding publication of a notice of lapse under N.D.C.C. § 38–18.1–06 is deemed abandoned and title vests in the owner of the surface estate. Section 38–18.1–01, N.D.C.C., defines "mineral interest:"

> In this chapter, unless context or subject matter otherwise requires, "mineral interest" includes any interest in oil, gas, coal, clay, gravel, uranium, and all other minerals of any kind and nature, whether created by grant, assignment, reservation, or otherwise owned by a person other than the owner of the surface estate.

Yesel argues the phrase "any interest" as used in the definition of a "mineral interest" in N.D.C.C. § 38–18.1–01 includes a royalty interest.

[¶ 10] This Court has discussed mineral interests and royalty interests:

> A mineral acre is the full mineral interest in one acre of land. A mineral interest is a property interest created after an oil and gas severance from the surface and generally includes the right to sell all or part of the estate, the right to explore and develop the estate, the right to execute oil and gas leases, and the right to create fractional shares of the mineral estate. Mineral rights generally include those same basic interests. A royalty interest is a smaller interest in a mineral estate which is a share of the product or proceeds reserved to the owner for permitting another to develop or use the property. Mineral and royalty interests. are separate property interests with different characteristics.

*Acoma Oil Corp. v. Wilson,* 471 N.W.2d 476, 481 (N.D.1991) (citations omitted). The main characteristic of a mineral inter-est is the right to enter the land to explore, drill, produce and otherwise carry on mining activities, which distinguishes it from a royalty interest. *Texaro Oil Co. v. Mosser,* 299 N.W.2d 191, 194 (N.D.1980).

[¶ 11] An owner of a nonparticipating royalty interest owns a share of the oil and gas production provided for under an existing lease. 1 Williams & Meyers, *Oil & Gas Law* § 301, at 444.1–444.2 (2014). If the mineral interest owner develops the estate and produces oil and gas, the royalty owner shares in that production. *Id.* at 444.2.

[¶ 12] Section 38–18.1–03(1), N.D.C.C., describes when a mineral interest is deemed used, and states:

> A mineral interest is deemed to be used when:
>
> a. There are any minerals produced under that interest.
>
> b. Operations are being conducted thereon for injection, withdrawal, storage, or disposal of water, gas, or other fluid substances.
>
> c. In the case of solid minerals, there is production from a common vein or seam by the owners of such mineral interest.
>
> d. The mineral interest on any tract is subject to a lease, mortgage, assignment, or conveyance of the mineral interest recorded in the office of the recorder in the county in which the mineral interest is located.
>
> e. The mineral interest on any tract is subject to an order or an agreement to pool or unitize, recorded in the office of the recorder in the county in which the mineral interest is located.
>
> f. Taxes are paid on the mineral interest by the owner or the owner's agent.

g. A proper statement of claim is recorded as provided by section 38–18.1–04.

[¶ 13] Here, Yesel does not claim the mineral interests related to the Brandon defendants' royalty interests were abandoned. It is undisputed the mineral interests related to the Brandon defendants' royalty interests were used within the 20–year period preceding the publication of the notice of lapse because the related mineral interests were subject to numerous leases, were subject to a pooling order issued from the North Dakota Industrial Commission, and were producing oil from at least two wells. Under N.D.C.C. § 38–18.1–03(1), the related mineral interests were being used under subparagraphs (a), (d), and (e). As discussed above, an owner of a royalty interest cannot develop or produce the minerals related to the royalty interest. A royalty interest owner receives a share of the proceeds from the production of the minerals. Therefore, we conclude a royalty interest cannot be considered abandoned if the related mineral interest is being used under N.D.C.C. § 38–18.1–03(1), and find it unnecessary in this case to address whether the abandoned mineral statutes contained in N.D.C.C. ch. 38–18.1 apply to royalty interests. To the extent N.D.C.C. ch. 38–18.1 may apply to royalty interests, we conclude a royalty interest is used if the related mineral interest is used under N.D.C.C. § 38–18.1–03(1). The district court did not err in granting Teigen summary judgment.

### III

[¶ 14] On cross-appeal, Teigen argues the district court abused its discretion in denying his motion to file a counterclaim and his motion for attorneys' fees.

### A

[¶ 15] After the district court granted summary judgment, Teigen moved to file counterclaims against Yesel relating to royalty payments attributable to the Brandon defendants' royalty interests that Yesel allegedly received after default judgment was granted in the first action. Yesel opposed the motion, arguing Teigen's counterclaims were compulsory and should have been raised in his answer. In denying Teigen's motion, the court stated:

This Court finds [Teigen's] counterclaims are compulsory as they directly arise out of the same transaction or occurrence of [Yesel's] claim to [Teigen's] royalty interest. [Teigen] knew or should have known that royalty payments were being issued for the lands subject to the quiet title actions as he has admitted he was aware oil and gas production was occurring and a judgment was previously obtained in [Yesel's first action]. This establishes [Teigen] knew or should have known of his counterclaims at the time [Teigen] was required to respond to [Yesel's] Complaint. For the foregoing reasons, this Court finds [Teigen's] counterclaims are compulsory and [Teigen] was required to plead the counterclaims in his previous pleading. [Teigen's] failure to include the counterclaims in his previous pleading now precludes him from asserting those counterclaims.

[¶ 16] Analysis of Teigen's counterclaim argument requires a discussion of Rules 13 and 15 of the North Dakota Rules of Civil Procedure. Under N.D.R.Civ.P. 13(a)(1)(A), "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against any opposing party, if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." "The failure to

plead a compulsory counterclaim in response to the opposing party's pleading precludes that counterclaim from being raised in a subsequent action." *Security Nat'l Bank v. Wald*, 536 N.W.2d 924, 928 (N.D.1995). This Court has construed "transaction or occurrence" broadly to avoid multiple lawsuits and to mean a claim that is "logically related" to the opposing party's claim. *Id.*

[¶ 17] Former N.D.R.Civ.P. 13(f) dealt with omitted counterclaims, "which set out standards for amending pleadings to add a counterclaim." N.D.R.Civ.P. 13, Explanatory Note. The Explanatory Note to Rule 13 also states, "[s]ubdivision (f) . . . was deleted, effective March 1, 2011, to track the 2009 federal amendment. The subdivision was redundant of Rule 15, which sets out standards for amending pleadings in general."

[¶ 18] Under N.D.R.Civ.P. 15(a)(2), leave to amend a pleading "shall be freely given when justice so requires." A decision on a motion to amend a pleading is addressed to the sound discretion of the district court and will not be reversed on appeal unless the court abused its discretion. *Wald*, 536 N.W.2d at 928. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when the court misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Sagebrush Res., LLC v. Peterson*, 2014 ND 3, ¶ 17, 841 N.W.2d 705 (quoting *Barrett v. Gilbertson*, 2013 ND 35, ¶ 25, 827 N.W.2d 831).

[¶ 19] Rules 13 and 15, N.D.R.Civ.P., are based on Rules 13 and 15, Fed.R.Civ.P. *See* N.D.R.Civ.P. 13, Explanatory Note; N.D.R.Civ.P. 15, Explanatory Note. "When a state rule is derived from a corresponding federal rule, the federal courts' interpretation of the federal rule may be persuasive authority when interpreting our rule." *White v. T.P. Motel, L.L.C.*, 2015 ND 118, ¶ 20, 863 N.W.2d 915.

[¶ 20] Professors Miller, Wright, and Kane have discussed amending a pleading to assert a counterclaim in an ongoing action:

Even though it is clear that Rule 15 now governs the question whether an omitted counterclaim can be inserted into an ongoing action, many of the same factors that courts considered under Rule 13(f) remain relevant. Thus, for example, the court may be influenced by whether the omitted counterclaim is characterized as compulsory under Rule 13(a) or permissive under Rule 13(b). When it is permissive and the amendment will not prejudice the opposing party, the court should be guided primarily by the general policy of Rule 13 of promoting the economical settlement of all existing disputes between the parties in one action. When the omitted counterclaim is compulsory, the reasons for allowing its introduction by amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases . . . and the pleader will lose the opportunity to have the claim adjudicated. Accordingly, the court normally will be more willing to grant leave to amend when a Rule 13(a) counterclaim is involved than when a Rule 13(b) counterclaim is at stake. Even leave to amend to file a compulsory counterclaim may be denied, however, if the delay in pleading the counterclaim is deemed prejudicial.

6 Charles A. Wright, et al., *Federal Practice and Procedure: Civil 3d* § 1430, 262–66 (2010) (footnotes omitted).

[¶ 21] In general, federal courts have allowed amendments to pleadings to assert a compulsory counterclaim in an ongoing action when the pleader did not act in bad faith, when the opposing party would not be prejudiced or surprised, or when adding the counterclaim would not substantially delay the action. *See Spartan Grain & Mill Co. v. Ayers,* 517 F.2d 214, 220 (5th Cir.1975); *Bern Unlimited, Inc. v. Burton Corp.,* 25 F.Supp.3d 170, 185–86 (D.Mass. 2014); *Pacific Scientific Energetic Materials Co. (Ariz.) LLC v. Ensign–Bickford Aerospace & Defense Co.,* 281 F.R.D. 358, 363 (D.Ariz.2012); *Palantir Tech., Inc. v. Palantir.Net, Inc.,* 2011 WL 1362131, *3 (N.D.Cal.2011); *Jupiter Aluminum Corp. v. Home Ins. Co.,* 181 F.R.D. 605, 609 (N.D.Ill.1998); *Perfect Plastics Indus., Inc. v. Cars & Concepts, Inc.,* 758 F.Supp. 1080, 1082 (W.D.Pa.1991).

[¶ 22] This Court addressed a somewhat similar situation in *Wald,* 536 N.W.2d 924. In that case, the Walds answered the bank's complaint and asserted a counterclaim against the bank. *Id.* at 926. After receiving additional information discovered during the course of the action, the Walds moved to assert another counterclaim against the bank. *Id.* The district court denied the motion, stating the new counterclaim "could be handled in some separate action." *Id.* at 928. The court did not consider whether the Wald's counterclaim was compulsory. *Id.* at 929. On appeal, this Court concluded the Wald's counterclaim was compulsory and had to be raised in the instant action, because it could not be raised in a subsequent action. *Id.* at 928–29. We concluded the court abused its discretion and misapplied the law on compulsory counterclaims when it stated the Wald's counterclaim "could be handled in some separate action" without considering whether the counterclaim was compulsory. *Id.* at 929.

[¶ 23] Here, like in *Wald,* Teigen moved to file counterclaims against Yesel after receiving information through discovery; information he had been seeking from Yesel for approximately one year. Unlike in *Wald,* here the district court found Teigen's counterclaims were compulsory and should have been raised in his answer. The court stated because Teigen was aware oil and gas production was occurring on the subject lands and a default judgment had already been entered in favor of Yesel, he "knew or should have known that royalty payments were being issued for the lands subject to the quiet title actions" at the time he moved to vacate the default judgment in the first action and answer the complaint in the second action. The court concluded Teigen's failure to raise the counterclaims in his answer "now precludes him from asserting those counterclaims."

[¶ 24] The record is unclear whether Teigen knew or should have known Yesel was receiving royalty payments attributable to his heirs' royalty interests when he moved to vacate the default judgment in the first action and filed an answer in the second action in December 2012. Teigen first requested the royalty payment information from Yesel in May 2013. In August 2013, he moved to compel discovery, claiming he was seeking the royalty payment information to determine whether he had a counterclaim against Yesel. At the March 2014 summary judgment hearing, Teigen's attorney stated he had not received the information he was seeking from Yesel. Teigen's attorney stated the information was relevant to determine whether Teigen had a counterclaim for damages if he prevailed on his motion for summary judgment. The parties agreed at the hearing Yesel would provide Teigen with the information he was requesting. Teigen stated he re-

ceived the royalty payment information on May 22, 2014, the same day he moved to file the counterclaims. A party making apparently reasonable efforts to determine the basis for a counterclaim should not be precluded from asserting that claim. *See Refuse Fuels, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 139 F.R.D. 576, 578–79 (D.Mass.1991) ("[I]t seems unreasonable to second-guess the judgment of defendants' counsel that they did not have a sufficient basis to assert the ... counterclaims until after some discovery which occurred after the time within which the counterclaims could have been asserted in response to earlier pleadings.").

[¶ 25] As discussed above, the district court found Teigen's counterclaims were compulsory and concluded Teigen's failure to assert the compulsory counterclaims in his answer barred him from asserting those counterclaims. Assuming, as the district court did, that Teigen's counterclaims are compulsory under N.D.R.Civ.P. 13(a), Teigen would be precluded from asserting the counterclaims in a subsequent action, not in the same action. To the extent the court's rationale was that Teigen waived his compulsory counterclaims because he did not assert them in his answer, the court misapplied the law on compulsory counterclaims.

[¶ 26] The court also failed to consider whether, under N.D.R.Civ.P. 15(a)(2), "justice so required" that Teigen be granted leave to amend his answer to assert the counterclaims. The court did not consider whether Teigen acted in bad faith in moving to assert the counterclaims, and the record does not indicate that he did. Teigen sought the royalty payment information for approximately one year to determine whether he had any counterclaims against Yesel if the court ruled the royalty interests were not abandoned. Yesel did not argue she would be

prejudiced by allowing Teigen to assert the counterclaims; she knew Teigen was seeking the royalty payment information to determine whether he had any counterclaims. We conclude the district court abused its discretion when it misapplied the law on compulsory counterclaims. We remand for reconsideration of Teigen's motion to amend his answer to assert his counterclaims against Yesel.

B

[¶ 27] Teigen argues the district court abused its discretion in denying his motion for attorneys' fees, because Yesel's quiet title actions against his heirs' royalty interests were frivolous and made in bad faith. Yesel's claim that the abandoned mineral statutes apply to royalty interests is one of first impression. Although we did not decide that issue, we conclude the district court did not abuse its discretion in denying Teigen's motion for attorneys' fees.

IV

[¶ 28] We have considered the parties' remaining arguments and find them to be either without merit or unnecessary to our decision. The summary judgment for Teigen is affirmed. The judgment denying Teigen's motions to file a counterclaim and for attorneys' fees is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

[¶ 29] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and LISA FAIR McEVERS, JJ., concur.