2014 ND 200

**NORTHSTAR FOUNDERS, LLC, f/k/a Northstar Agri Industries, LLC, Plaintiff, Appellee and Cross–Appellant**

v.

**HAYDEN CAPITAL USA, LLC, Hayden Capital Corp., Irish Financial Group, Inc., MDL Consulting Group, LLC, Peter Williams, Stephen Hayden, Robert Liebig, and Andrew Zweig, Defendants.**

**Hayden Capital USA, LLC, Irish Financial Group, Inc., MDL Consulting Group, LLC, Robert Liebig, and Andrew Zweig, Third–Party Plaintiffs**

v.

**PICO Northstar, LLC, and PICO Northstar Hallock, LLC Third–Party Defendants and Appellees.**

**Hayden Capital USA, LLC, Hayden Capital Corp., MDL Consulting Group, LLC, Peter Williams, Stephen Hay-**

den, and Andrew Zweig, Defendants, Appellants and Cross–Appellees.

No. 20130245.

Supreme Court of North Dakota.

Oct. 31, 2014.

Benjamin J. Hasbrouck (argued), Todd E. Zimmerman (on brief), and Aubrey J. Fiebelkorn–Zuger (on brief), Fargo, ND, for plaintiff, appellee and cross-appellant.

John S. Craig (argued), Allegaert Berger & Vogel, LLP, New York, NY, and Ronald H. McLean (appeared), Fargo, ND, for defendants, appellants and cross-appellees Hayden Capital Corp., Hayden Capital USA, LLC, Stephen Hayden and Peter Williams.

M. Ray Hartman (argued), and Shannon Sorrells (on brief), San Diego, CA, and Robert J. Udland (appeared), and Vanessa L. Anderson (on brief), Fargo, ND, for third-party defendants and appellees.

James K. Langdon (argued), and Shannon L. Bjorklund (on brief), Dorsey & Whitney LLP, Minneapolis, MN; Sarah A. Herman (on brief), and Ross Allen Nilson (on brief), Fargo, ND, for defendants, appellants and cross-appellees MDL Consulting Group LLC, and Andrew Zweig.

SANDSTROM, Justice.

[¶ 1]   Hayden Capital USA, LLC, Hayden Capital Corp., Peter Williams, and Stephen Hayden (collectively "Hayden") and MDL Consulting Group, LLC and Andrew Zweig (collectively "MDL") appeal, and Northstar Founders, LLC cross-appeals from a district court judgment declaring that Northstar does not owe Hayden or MDL finder's fees for securing financing for a canola processing plant. We affirm.

I

[¶ 2]   Northstar is a North Dakota company which was seeking financing to build a canola processing plant near Hallock, Minnesota. Northstar worked with several companies in an effort to raise funds for the project.

[¶ 3]   In early April 2008, Northstar entered into a financial advisory agreement ("MDL Agreement") with MDL and Irish Financial Group, Inc. The agreement provided that MDL and Irish might act as a finder of potential sources of financing and required Northstar to pay various fees to MDL and Irish for their services, including success and equity fees if certain conditions were met.

[¶ 4]   In April 2008, MDL and Irish introduced Northstar to Peter Williams. Williams was an investment banker in the New York office of Oppenheimer & Co., Inc., and was also a member of the board of directors of Hayden Capital Corp. ("Hayden Capital").

[¶ 5]   MDL and Irish suggested Northstar enter into a financial advisory agreement with Hayden Capital USA ("Hayden USA"), a subsidiary of Hayden Capital. On May 2, 2008, Northstar signed a non-exclusive letter agreement with Hayden USA dated April 27, 2008 ("Hayden Agreement"). Under the agreement, Northstar retained Hayden USA to act as a non-exclusive financial advisor and placement agent in connection with financing for the canola processing plant. Under the agreement, Hayden USA agreed to identify and introduce Northstar to potential purchasers or lenders and assist in structuring the financing and terms of the equity or debt financing. The agreement provided Northstar would pay Hayden USA a financing fee as compensation for its services if the conditions of the agreement were met. Stephen Hayden signed the agreement for Hayden USA.

[¶ 6]   On April 28, 2008, Northstar entered into a confidentiality and non-disclosure agreement with Oppenheimer, which stated the purpose of the agreement was to facilitate business dealings between Northstar and Oppenheimer associated with the development of the canola processing plant. Williams signed the agreement for Oppenheimer.

[¶ 7]   In July 2008, Williams introduced Northstar to PICO Holdings, Inc. In 2010, PICO Holdings and Northstar negotiated a transaction to build the canola processing plant. PICO Holdings contributed $60,000,000 to a new corporation, PICO Northstar Management, LLC, which was wholly owned by PICO Holdings. PICO

Northstar Management contributed $60,000,000 to another new corporation, PICO Northstar, LLC, and owned 87.66 percent of PICO Northstar's shares. Northstar contributed $8,400,000 in assets to PICO Northstar, and owned 12.34 percent of PICO Northstar's shares. PICO Northstar formed a new corporation, PICO Northstar Hallock, LLC, and placed all of its assets into PICO Northstar Hallock. ING invested $100,000,000 in PICO Northstar Hallock, secured by a guarantee and equity pledge from PICO Northstar and a guarantee from PICO Holdings. The canola processing plant was built and began operating.

[¶ 8]   Hayden USA demanded a finder's fee from Northstar under the Hayden Agreement, claiming Williams was working on behalf of Hayden USA when he introduced Northstar to PICO Holdings. Irish and MDL also sought a finder's fee from Northstar, claiming they satisfied the terms of the MDL Agreement when they introduced Northstar to Williams.

[¶ 9]   In January 2011, Northstar brought a declaratory judgment action against Hayden, Irish, and MDL, requesting the district court declare that Northstar did not owe any fees or other compensation related to the construction of the canola processing plant to Hayden, Irish, and MDL. Hayden moved to dismiss the action on the basis of lack of personal jurisdiction and improper venue under N.D.R.Civ.P. 12(b)(2) and (3). Northstar responded to the motion to dismiss and moved to amend its complaint to add counts of constructive and actual fraud. Hayden opposed Northstar's motion. After a hearing on the motion, the district court granted Northstar's motion to amend its complaint and found it had personal jurisdiction over Hayden under N.D.R.Civ.P. 4(b)(2)(C), committing a tort within or outside this state causing injury

to another person or property within the state, on the basis of Northstar's claim it was fraudulently induced to enter into the Hayden Agreement. Northstar filed an amended complaint requesting declaratory relief and asserting a claim of fraud against Hayden.

[¶ 10] Irish and MDL served and filed an answer and counterclaim against Northstar for breach of contract. Irish and MDL alleged Northstar failed to pay the fees it owes under the terms of the MDL Agreement related to their introduction of Williams to Northstar.

[¶ 11] Hayden served and filed an answer to the amended complaint and counterclaims against Northstar for breach of contract, unjust enrichment, and quantum meruit. Hayden alleged Northstar and Hayden USA had an agreement, Williams was working for Hayden USA when he introduced Northstar to PICO Holdings, and Northstar was required to pay Hayden USA certain fees under the Hayden Agreement for successfully introducing Northstar to a financing source for the canola processing plant.

[¶ 12] Hayden also served and filed a third party complaint against PICO Northstar and PICO Northstar Hallock (collectively "PICO Defendants"), seeking damages for claims of breach of contract, unjust enrichment, and quantum meruit. Hayden alleged Northstar and the PICO Defendants breached the Hayden agreement by refusing to pay any part of the fees owed to Hayden USA under the agreement. Hayden also alleged Northstar and the PICO Defendants were enriched when Hayden USA successfully introduced Northstar to PICO Holdings and financing was obtained for the benefit of Northstar and the PICO Defendants.

[¶ 13] In March 2012, Northstar served and filed a second amended complaint, naming Williams, Stephen Hayden, Robert Liebig, and Andrew Zweig as defendants in addition to the previously named defendants. Stephen Hayden is a shareholder and officer of Hayden Capital and an officer of Hayden USA, Robert Liebig is the president and sole shareholder of Irish, and Andrew Zweig is the managing partner of MDL. The complaint contained more detailed facts, requested declaratory relief, and included claims for fraudulent inducement, fraud, wrongful or tortious interference, piercing the corporate veil, punitive damages, and negligent misrepresentation.

[¶ 14] Irish and MDL served and filed an answer and breach of contract counterclaim against Northstar and a cross-claim for unjust enrichment and quantum meruit against PICO Northstar Hallock. Hayden filed an answer to the second amended complaint; a counterclaim against Northstar for breach of contract, unjust enrichment, and quantum meruit; and a third party complaint against the PICO Defendants for breach of contract, unjust enrichment, and quantum meruit.

[¶ 15] The PICO Defendants moved for summary judgment against Hayden, Irish, and MDL, arguing their claims were without merit. Northstar also moved for summary judgment against Hayden, Irish, and MDL, arguing their counterclaims should be dismissed and Northstar's request for declaratory relief should be granted. Irish and MDL moved for summary judgment against Northstar, requesting dismissal of Northstar's declaratory judgment claim and requesting judgment in their favor on their breach of contract counterclaim. Hayden moved for summary judgment, requesting the court dismiss all of Northstar's claims against Hayden and grant Hayden relief on their counterclaim.

[¶ 16] After a hearing on the motions, the district court denied Northstar's mo-

tions to dismiss Hayden, Irish, and MDL's breach of contract counterclaims, but granted Northstar's motion to dismiss Hayden's equitable counterclaims. The court also denied Hayden, Irish, and MDL's motions to dismiss Northstar's declaratory judgment claims, but granted Hayden's motion to dismiss Northstar's fraudulent inducement, fraud, wrongful or tortious interference, piercing the corporate veil, punitive damages, and negligent misrepresentation claims. The court granted the PICO Defendants' motion for summary judgment dismissing Hayden's breach of contract claim against the PICO Defendants, but denied its motion to dismiss Hayden, Irish, and MDL's unjust enrichment and quantum meruit claims.

[¶ 17] Hayden moved to dismiss for lack of jurisdiction, arguing that the court determined they were subject to personal jurisdiction under N.D.R.Civ.P. 4(b) solely on the basis of the allegations of tortious activity asserted by Northstar in its amended complaint and that the court's exercise of jurisdiction over Hayden was no longer appropriate, because those tort claims were dismissed. Northstar opposed Hayden's motion to dismiss. After a hearing, the district court denied Hayden's motion.

[¶ 18] A court trial was held on the remaining issues. After the trial, the court dismissed Hayden, Irish, and MDL's breach of contract counterclaims against Northstar, dismissed Hayden, Irish, and MDL's equitable claims against the PICO Defendants, and dismissed Northstar's claims of fraud and negligent misrepresentation against Irish and MDL. The court granted Northstar declaratory relief, declaring that Northstar did not owe finder's fees to Hayden, Irish, or MDL. The court found Hayden was not entitled to a finder's fee under the Hayden Agreement because Williams introduced PICO Holdings

to Northstar, Williams was acting on behalf of Oppenheimer and not Hayden USA when he introduced PICO Holdings to Northstar, and Hayden USA did not make any introductions of potential purchasers that resulted in any financing to Northstar. The court interpreted the MDL Agreement and found Irish and MDL were not entitled to a finder's fee under the agreement because the agreement only required Northstar to pay a fee if Irish and MDL introduced Northstar to a potential source of financing, Irish and MDL introduced Williams to Northstar, Williams was not a source of financing, and Irish and MDL did not introduce a potential source of financing. The court awarded Northstar costs and disbursements.

[¶ 19] Northstar and the PICO Defendants submitted proposed costs and disbursements. Judgment was entered, awarding Northstar costs and disbursements in the amount of $15,945.02 and awarding the PICO Defendants $10,179.00 in costs and disbursements.

[¶ 20] Hayden and MDL appealed, and Northstar cross-appealed from the judgment. Irish and Liebig did not appeal the judgment.

[¶ 21] The district court had subject-matter jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeals and cross-appeal were timely under N.D.R.App.P. 4(a). This Court has subject-matter jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 22] Hayden argues the district court erred in determining it had personal jurisdiction over them. Whether a court has personal jurisdiction over a party is a question of law, which is reviewed under the de novo standard on appeal. *Ensign v. Bank of Baker*, 2004

ND 56, ¶ 11, 676 N.W.2d 786. If the defendant challenges the court's jurisdiction, the plaintiff has the burden to prove jurisdiction exists. *Id.* To defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing of jurisdiction. *Id.* If the court relies on the pleadings and affidavits and does not hold an evidentiary hearing, it must look at the facts in the light most favorable to the plaintiff. *Rodenburg v. Fargo–Moorhead Young Men's Christian Ass'n*, 2001 ND 139, ¶ 17, 632 N.W.2d 407.

[¶ 23] " 'A court has personal jurisdiction over a person if the person has reasonable notice that an action has been brought and sufficient connection with the forum state to make it fair to require defense of the action in the state.' " *Ensign*, 2004 ND 56, ¶ 9, 676 N.W.2d 786 (quoting *Larson v. Dunn*, 474 N.W.2d 34, 38–39 (N.D.1991)). The court must apply a two-prong analysis to determine whether it has personal jurisdiction over a nonresident defendant. *Hansen v. Scott*, 2002 ND 101, ¶ 16, 645 N.W.2d 223. The court must first decide whether " 'the forum state's long-arm statute confers jurisdiction over the non-resident defendant,' and, if it does, the court must determine if 'the exercise of personal jurisdiction over the non-resident defendant comports with due process.' " *Rodenburg*, 2001 ND 139, ¶ 15, 632 N.W.2d 407 (quoting *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225 (8th Cir.1987)).

### A

[¶ 24] Rule 4(b)(2), N.D.R.Civ.P., North Dakota's long-arm provision, authorizes North Dakota courts to exercise personal jurisdiction over nonresident defendants on the basis of contacts with this state:

A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over the person does not offend against traditional notions of justice or fair play or the due process of law, under one or more of the following circumstances:

. . . .

(C) committing a tort within or outside this state causing injury to another person or property within this state[.]

[¶ 25] Hayden argues Northstar failed to establish the court had jurisdiction under any of the subparagraphs of N.D.R.Civ.P. 4(b)(2). They contend the court erred in concluding it had jurisdiction under N.D.R.Civ.P. 4(b)(2)(C), because that provision applies only to tort claims and Northstar never established a prima facie tort claim.

[¶ 26] Rule 4(b)(2)(C), N.D.R.Civ.P., authorizes the exercise of personal jurisdiction over a nonresident defendant who committed a tort within or outside North Dakota causing injury to another person or property within this state. *See Hansen*, 2002 ND 101, ¶ 18, 645 N.W.2d 223. To establish jurisdiction under N.D.R.Civ.P. 4(b)(2)(C), the plaintiff satisfies the first prong of the personal jurisdiction test by establishing a prima facie cause of action for a tort claim. *Hansen*, at ¶ 18. The court considers the facts alleged in the complaint in the light most favorable to the plaintiff to determine whether the plaintiff established a prima facie cause of action. *See id.* at ¶ 23; *see also In re Estate of Clemetson*, 2012 ND 28, ¶ 8, 812 N.W.2d 388 (a prima facie case is a "bare minimum" and is established if the party bearing the burden of proof presents evidence strong enough, if uncontradicted, to support a finding in that party's favor).

[¶ 27] Northstar moved to amend its complaint to add a tort claim of fraud, and its amended complaint included a fraud claim under N.D.C.C. § 9–03–08. Section 9–03–08, N.D.C.C., defines actual fraud:

Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with the party's connivance, with intent to deceive another party thereto or to induce the other party to enter into the contract:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though that person believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive.

A tort action for fraud requires a contract between the parties; a misrepresentation of facts, suppression of facts, misleading another, or promising without an intent to perform; reliance on the false or misleading representation; and proof of actual damages proximately caused by the misrepresentation or nondisclosure. *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 25, 730 N.W.2d 841; *Dahl v. Messmer*, 2006 ND 166, ¶ 8, 719 N.W.2d 341.

[¶ 28] Hayden argues the court erred in concluding it had personal jurisdiction, because Northstar failed to establish the essential elements of its fraud claim with any degree of particularity. Hayden claims Northstar did not allege any misrepresentation or suppression of fact or that it suffered any damages from the alleged fraud. Rule 9(b), N.D.R.Civ.P., requires a party alleging fraud to state the circumstances constituting fraud with particularity in the pleading. "'No particular form or language is required in alleging fraud so long as the elements constituting fraud may be found from reading the whole pleading.'" *In re Estate of Dionne*, 2009 ND 172, ¶ 11, 772 N.W.2d 891 (quoting *Miller Enter., Inc. v. Dog N' Cat Pet Centers*, 447 N.W.2d 639, 643 (N.D.1989)). "'[W]hen the plaintiff makes an allegation of fraud the defendant must receive enough information to prepare a response and defense, and the plaintiff must apprise the defendant fairly of the charge.'" *Dionne*, at ¶ 11 (quoting *Miller*, at 643). Proof of actual damages proximately caused by the misrepresentation or nondisclosure is an essential element of a tort action for fraud. *WFND*, 2007 ND 67, ¶ 25, 730 N.W.2d 841. "A fraud or deceit which has caused no injury cannot be made the basis for an action, because courts do not 'sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or injury.'" *Lang v. Schafer*, 2000 ND 2, ¶ 8, 603 N.W.2d 904 (quoting *Sonnesyn v. Akin*, 14 N.D. 248, 256, 104 N.W. 1026, 1028 (1905)).

[¶ 29] On February 18, 2011, Hayden filed its motion to dismiss, arguing the district court lacked personal jurisdiction, after Northstar filed its initial complaint seeking only declaratory relief. On March 22, 2011, Northstar moved for leave to amend its complaint and add a claim of fraud. Northstar filed a memorandum with affidavits in support of its motion to amend the complaint. Hayden opposed Northstar's motion to amend and argued the fraud claim was not plausible on its face because the evidence showed there was no question Williams was working for Hayden USA. Hayden also argued amend-

ing the complaint would be futile and Northstar's motion to amend should be denied because Northstar's fraud claim was not a tort claim but was a contractual claim for rescission, Hayden never made a misrepresentation to Northstar, Northstar ratified its contract with Hayden USA in August 2008, Northstar consented to the contract by accepting the benefits of the contract, and Northstar did not act with "reasonable promptitude" after it discovered the alleged fraud. The court held a hearing to allow the parties to present their arguments, but it did not take any evidence. On April 28, 2011, the district court granted Northstar's motion to amend the complaint and denied Hayden's motion to dismiss. The court decided Hayden's motion to dismiss before an amended complaint was filed, including a fraud claim. Hayden did not object to the court's determining whether it had personal jurisdiction on the basis of Northstar's argument for its motion to amend the complaint and its argument at the hearing.

[¶ 30] On May 20, 2011, Northstar served and filed its amended complaint. Hayden filed an answer, alleging the court did not have jurisdiction. Hayden did not move to dismiss for lack of personal jurisdiction, but moved for a more definite statement, arguing Northstar must clearly elect a remedy because it was improperly seeking both to rescind the contract and to recover tort damages under the contract. The court denied Hayden's motion. On March 20, 2012, Northstar filed a second amended complaint after the court granted Northstar leave to amend its complaint on the basis of the parties' stipulation. Hayden filed an answer to the second amended complaint, alleging the court did not have jurisdiction, but did not move to dismiss for lack of personal jurisdiction.

[¶ 31] Hayden did not argue Northstar failed to establish a prima facie

case for a tort claim of fraud because it did not adequately plead the damages element of the claim. Rather, Hayden admitted during the hearing on their motion to dismiss that Northstar was claiming damages, and they did not argue the damages element was not sufficiently pled. In their motion for a more definite statement, Hayden argued Northstar's amended complaint improperly sought both rescission of the contract and damages, rescission and damages were inconsistent remedies and are not available in the same action, and Northstar was required to clearly elect its remedy. Hayden did not argue Northstar failed to establish the damages element of its tort claim of fraud. Hayden is raising this issue for the first time on appeal. Issues that were not raised before the district court cannot be raised for the first time on appeal. *Alerus Fin., N.A. v. Lamb*, 2003 ND 158, ¶ 17, 670 N.W.2d 351.

[¶ 32] Furthermore, if we look at the facts alleged in the light most favorable to Northstar, we conclude it established a prima facie cause of action. In Northstar's memorandum in support of its motion to amend its complaint, Northstar argued Hayden targeted Northstar in a fraudulent scheme, Hayden made misrepresentations and engaged in misleading conduct designed to induce Northstar to enter into a contract, and Hayden claimed Northstar owed them $4.8 million dollars. Northstar claimed Williams was introduced as and represented at all times that he was an employee of Oppenheimer, Northstar entered into an agreement with Hayden USA because it was led to believe Hayden USA had independent capabilities and would create competition with Williams and Oppenheimer, and Hayden was attempting to collect fees from Northstar on the basis of the fraudulent scheme. Neil Juhnke, Northstar's president, filed an affidavit alleging Northstar negotiated

a confidentiality agreement with Oppenheimer through Williams in April 2008, Northstar was introduced to Hayden USA in May 2008 as a competitor of Oppenheimer, Williams began introducing Northstar to potential funding sources, Williams' communications indicated he was working for Oppenheimer, Williams' emails contained a disclaimer stating his communications came exclusively from Oppenheimer, Williams introduced Northstar to PICO Holdings in July 2008, Williams sent Northstar a proposed finder's agreement with Oppenheimer in August 2008, and Northstar did not hear from Hayden USA until fall 2010 when Hayden USA sent Northstar an invoice claiming it owed Hayden USA $4.8 million in finder's fees. At the hearing, Northstar claimed the damages were significant and multiple parties were claiming it owed them for Williams' services.

[¶ 33] Northstar's amended complaints are consistent with its prior allegations. Northstar's amended complaint alleged it entered into a "non-exclusive" letter agreement with Hayden USA requiring Hayden USA to use its best efforts to consummate "financings" for Northstar as defined by the agreement, Hayden USA was now claiming Williams was working on its behalf, and Hayden USA claimed it was entitled to fees under the terms of the agreement on the basis of Williams' activities. The amended complaint further alleged Williams represented himself to Northstar as an agent of Oppenheimer, Williams and Hayden USA did not disclose that Williams was representing and working for Hayden USA, Northstar was told Hayden USA was a competitor of Oppenheimer and Williams, and Hayden USA and Williams "credited" that assertion. Northstar alleged it would not have entered into the agreement with Hayden USA if it had been told that Williams was an agent of Hayden USA or that Hayden USA was

only offering Williams' services. The amended complaint alleged Northstar was entitled to damages, and the second amended complaint further alleged its damages include the "detriment to Northstar's ability to effectively continue its operations, including to raise additional capital," and the amounts Northstar must pay the PICO entities to indemnify them from the fraudulent and meritless claims made against them. Northstar sought damages for the detriment to its ability to effectively continue operations and for the expenses it incurred to indemnify the PICO entities. Northstar's complaints alleged damages. *See Olson v. Fraase*, 421 N.W.2d 820, 829 (N.D.1988) ("One who through the tort of another has been required to act in the protection of his interests by . . . defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures[.]" (quoting *Restatement of Torts* 2d § 914(2))).

[¶ 34] Northstar alleged the misstatement or omission of facts by Hayden, reliance on the misstatements or omission, and damages caused by the nondisclosure. Considering the alleged facts in the light most favorable to Northstar, we conclude Northstar established a prima facie cause of action for fraud and satisfied the requirements of N.D.R.Civ.P. 4(b)(2)(C) to confer jurisdiction under the long-arm provision.

B

[¶ 35] We must also decide whether the exercise of personal jurisdiction over Hayden comports with due process. "Consistent with due process, a state may exercise personal jurisdiction over a nonresident defendant who is not present within the state when the nonresident defendant has 'certain minimum contacts with [the forum state] such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Hansen*, 2002 ND 101, ¶ 29, 645 N.W.2d 223 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). A state may not exercise personal jurisdiction over a nonresident on the basis of one isolated fortuitous circumstance, but "[t]he fact that only the injury occurred within a state does not preclude that state's courts from subjecting a nonresident to their jurisdiction." *Rodenburg*, 2001 ND 139, ¶ 18, 632 N.W.2d 407. "[A] critical part of the due process analysis is whether a nonresident defendant's conduct and connection with the forum state is such that the defendant should reasonably anticipate being haled into court there." *Hansen*, at ¶ 29.

[¶ 36] This Court has held a nonresident's intentional actions provide the forum state's courts with personal jurisdiction over the nonresident. *Rodenburg*, 2001 ND 139, ¶¶ 19, 21, 632 N.W.2d 407. " 'Where a forum state seeks specific personal jurisdiction over a non-resident defendant, due process is satisfied if the defendant has purposely directed his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities.' " *Id.* at ¶ 19 (quoting *Wessels, Arnold & Henderson v. National Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir.1995); *see also Calder v. Jones*, 465 U.S. 783, 790–91, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

[¶ 37] In this case, the focus of the alleged fraudulent scheme was Northstar, a North Dakota resident. Hayden purposely directed its activities at Northstar, and Northstar was the focal point of the challenged conduct and the harm allegedly suffered. The litigation results from Northstar's injuries arising out of Hay-

den's activities. Hayden's allegedly tortious and intentional actions were expressly aimed at Northstar in North Dakota, and they knew the injury would be felt in North Dakota. Hayden could reasonably anticipate being haled into court in North Dakota to answer for their actions. We conclude the district court had personal jurisdiction over Hayden.

### III

[¶ 38] Hayden argues the district court clearly erred by finding Williams acted on behalf of Oppenheimer when he introduced Northstar to PICO Holdings. They contend the evidence overwhelmingly established that Williams acted on behalf of Hayden USA.

[¶ 39] In an appeal from a bench trial, we review the district court's finding of fact under the clearly erroneous standard. N.D.R.Civ.P. 52(a); *see also In re Estate of Vizenor*, 2014 ND 143, ¶ 7, 851 N.W.2d 119. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or, on the basis of the entire record, this Court is left with a definite and firm conviction a mistake has been made. *Vizenor*, at ¶ 7. The district court determines credibility, and we do not second-guess the court's credibility determinations. *Id.* " 'A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the district court.' " *Id.* (quoting *MayPort Farmers Co–Op v. St. Hilaire Seed Co., Inc.*, 2012 ND 257, ¶ 7, 825 N.W.2d 883).

[¶ 40] In deciding Hayden failed to establish its breach of contract counterclaim against Northstar, the district court found Williams was acting on Oppenheim-

er's behalf, and not Hayden USA's behalf, when he introduced PICO Holdings to Northstar, and therefore Hayden was not entitled to a finder's fee under the terms of the Hayden Agreement. The court found:

Williams testified on numerous occasions during the trial that he was acting on behalf of Hayden USA at those times. Williams was a board member of Hayden Capital. Williams had permission from his previous employer, CIBC World Markets, to act as a director of Hayden Capital. What he was not permitted, under that agreement, was to use CIBC's name to raise capital or solicit business on Hayden Capital's behalf. On January 14, 2008, Oppenheimer & Co. acquired CIBC, and this "permission" survived.

Despite Williams' testimony to the contrary, the preponderance of the evidence suggests that Williams was acting on his employer Oppenheimer & Co.'s behalf when he introduced PICO Holdings to Northstar. That evidence includes the fact that Williams was employed by Oppenheimer at that time. Although Williams testified that he never sought committee approval from Oppenheimer because he believed it would not be a project they would be interested in, the fact that Williams, at one time, proposed a Hayden USA agreement that gave Oppenheimer a share of the fee is totally inconsistent with Oppenheimer not being interested.

On April 28, 2008, Peter Williams, acting on behalf of Oppenheimer & Co., prepared and presented to Northstar for its signature a Confidentiality and Non–Disclosure Agreement between Northstar and Oppenheimer. All the communications Williams had with Northstar on this project specifically represented Williams as an executive director, investment banking, Oppenheimer & Co.

When the Hayden USA Agreement was signed by Northstar on May 2, 2008, it was signed by Stephen Hayden, not Williams.

Williams obtained his PICO Holdings contact from another Oppenheimer & Co. employee, Paul Parhar. Parhar actually initiated the call to Damian Georgina of PICO Holdings around June 12, 2008. Williams, on that call, introduced himself as Williams from Oppenheimer & Co., and subsequent emails to Georgina were from Williams at Oppenheimer & Co.

Williams testified that on or about May 1, 2008, he explained to Neil Juhnke, of Northstar, Williams' involvement with Hayden USA. The Court does not find this testimony credible. Neil Juhnke did not recall that conversation that way. Furthermore, there is no confirming memo, letter, or email evidencing that conversation.

On or about August 11, 2008, Williams sent to Northstar an Oppenheimer & Co. agreement. Williams told Northstar that if it signed this agreement, he would see that the Hayden USA Agreement would be torn up. The Oppenheimer Agreement was never signed. This incident evidences Williams' belief and intention that at all times he was acting on Oppenheimer & Co.'s behalf when he introduced PICO Holdings to Northstar.

Williams left Oppenheimer & Co. in January of 2009. It was on October 25, 2010, that Williams first suggested to Northstar that he was acting on Hayden USA's behalf when Hayden USA submitted an invoice to Northstar. The Court finds that this action by Williams was his attempt to collect a fee, and was not truly an expression of his intention to be acting on Hayden USA's behalf

when the introduction of PICO Holdings was made.

■■■ [¶ 41] There is evidence in the record supporting the court's findings. Although Hayden contends there is conflicting evidence, the district court found the conflicting evidence was not credible, and we do not second-guess the trial court's credibility determinations. We do not reweigh the evidence or reassess the witnesses' credibility. *Danuser v. IDA Mktg. Corp.*, 2013 ND 196, ¶ 31, 838 N.W.2d 488. A court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Id.* There is evidence supporting the court's findings, and we are not left with a definite and firm conviction that a mistake has been made. We conclude the court's finding that Williams was working on behalf of Oppenheimer when he introduced Northstar to PICO Holdings is not clearly erroneous.

### IV

[¶ 42] MDL argues the district court erred in interpreting the terms of the MDL Agreement and dismissing its breach of contract claim against Northstar. MDL contends it is entitled to a fee under the terms of the agreement for introducing Northstar to Williams.

[¶ 43] MDL contends the court erred in applying North Dakota law to interpret the agreement because the agreement states it will be construed and governed in accordance with Minnesota law. The agreement states that it was "made in the State of Minnesota and shall be construed and governed in accordance with the laws thereof...." Northstar argues the court did not err in applying North Dakota law to interpret the agreement because the rules of contract interpretation in both states are effectively identical. We agree. Although the district court applied North Dakota contract interpretation principles

to construe the agreement, the court applied general rules of interpretation and Minnesota law is not materially different.

■■■■ [¶ 44] A breach of contract is the failure to perform a contractual duty when it is due. *Lyon Fin. Servs., Inc. v. Illinois Paper and Copier Co.*, 848 N.W.2d 539, 543 (Minn.2014); *WFND*, 2007 ND 67, ¶ 13, 730 N.W.2d 841. Under Minnesota law, to succeed on a breach of contract claim, the party alleging the breach must prove: (1) the existence of a contract, (2) performance by the plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) a breach of the contract by the defendant. *Lyon*, at 543; *c.f. WFND*, at ¶ 13 (elements for breach of contract are: (1) existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach). Whether a party has breached a contract is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *WFND*, at ¶ 13.

■■■■ [¶ 45] The construction of a written contract to determine its legal effect is a question of law, which is fully reviewable on appeal. *Brash v. Gulleson*, 2013 ND 156, ¶ 15, 835 N.W.2d 798. "'[O]n appeal, we independently examine and construe the contract to determine if the trial court erred in its contract interpretation.'" *Id.* (quoting *Bakken v. Duchscher*, 2013 ND 33, ¶ 13, 827 N.W.2d 17). We construe contracts to give effect to the parties' mutual intent at the time the contract was formed. N.D.C.C. § 9–07–03; *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn.2009). When possible, we look at the language of the contract alone to determine the parties' intent. N.D.C.C. § 9–07–04; *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn.2012). We give words their plain, ordinary, and commonly

understood meaning, unless contrary intention plainly appears. N.D.C.C. § 9–07–09; *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 180 (Minn.Ct.App.2012). We read the contract as a whole and give effect to each provision. N.D.C.C. § 9–07–06; *Baker*, at 180.

[¶ 46] When the language of the contract is unambiguous and the parties' intent can be determined from the language alone, the interpretation of the contract is a question of law. *Barrett v. Gilbertson*, 2013 ND 35, ¶ 10, 827 N.W.2d 831. If the language of the contract is clear and unambiguous and the intent is apparent from its face, there is no room for further interpretation, and extrinsic evidence may not be used to vary or contradict the terms of the agreement or to create an ambiguity. *Brash*, 2013 ND 156, ¶ 15, 835 N.W.2d 798; *Travertine Corp. v. Lexington–Silverwood*, 683 N.W.2d 267, 271 (Minn.2004).

[¶ 47] However, a contract is ambiguous if rational arguments can be made for different interpretations of the contract. *Caldas*, 820 N.W.2d at 832; *Barrett*, 2013 ND 35, ¶ 10, 827 N.W.2d 831. Whether a contract is ambiguous is a question of law, but if the contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the interpretation becomes a question of fact. *Caldas*, at 832; *Baker*, 812 N.W.2d at 180; *Barrett*, at ¶ 10. Ambiguous language must be construed against the drafter. *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 148 (Minn.2002).

[¶ 48] The MDL agreement included provisions requiring Northstar to pay various fees for certain services:

3. The Company[, Northstar,] and Advisor[, MDL and Irish,] further acknowledge and agree that Advisor may act as a finder of potential sources of Financing. The Company hereby agrees that in the event Advisor shall first introduce to the Company another party or entity, and that as a result of such introduction, a Financing is consummated (the "Introduced Financing"), the Company shall pay to Advisor a fee equal to two (2%) percent of the total amount of the Financing (an "Success Fee"). Any such Success Fee shall be paid in cash at the closing of the Financing to which it relates, and shall be payable in full whether or not the Financing involves securities, a combination of securities and cash, or is made on an installment basis.

4. In addition, the Company further agrees that in the event of an Introduced Financing, the Company shall deliver to Advisor a certificate representing five (5%) percent of the then-outstanding capital stock of the Company (the "Equity Fee").

The agreement defined "Financing" as "any public offering and/or any privately negotiated debt, equity or equity-linked investment accepted by the Company. . . ."

[¶ 49] MDL claims the district court correctly found it introduced Northstar to Williams, Williams introduced Northstar to PICO Holdings, and as a result of that introduction, Northstar received funding from PICO Holdings, which was a "Financing" as defined in the MDL agreement. However, MDL argues the court erred in interpreting the terms of the agreement. MDL contends it is entitled to the Success and Equity Fees under the agreement because it introduced Northstar to Williams and a financing resulted from that introduction.

[¶ 50] The district court interpreted the MDL Agreement and found the provision related to the Success Fee was ambiguous. The court explained:

The first line of paragraph three states that the Advisor "may act as a finder of potential sources of Financing." Here, Williams was not a "source" of funding. Rather, what Williams did was find another source of funding that was then recommended to Northstar.... the second sentence of paragraph three could include Williams.... The Court, however, finds an ambiguity in the contract. As stated earlier, the first line of paragraph three is limited to finding a source of financing, which Williams was not. The second line requires only that the Advisor introduce to Northstar a party, and that as a result of that introduction a financing is consummated. As stated earlier, a reading of that provision would include Williams.

Because the court found the agreement was ambiguous, it considered extrinsic evidence to determine the parties' intent. The court found Thomas Persson, a Northstar officer, testified that no agreement with Northstar was structured to pay one broker to find another broker, and Williams testified that he played a part in drafting the agreement and that it would be very atypical for an agreement to provide payment for an introduction of one broker by another broker. The court found the witnesses' testimony was credible and consistent with the spirit of the agreement. The court found Irish and MDL were entitled to a fee only if they introduced a "source of financing," and Williams was not a source of financing. The court concluded Irish and MDL's breach of contract claims failed.

[¶ 51] We agree with the district court's interpretation of the Success Fee provision of the agreement and conclude the agreement is ambiguous. Because we conclude the agreement is ambiguous, there was a fact issue about the parties' intent at the time they entered into the agreement. The evidence supports the court's finding that the parties intended MDL would be entitled to a fee only if it introduced a "source of financing." Furthermore, the ambiguities should be construed against the drafter, MDL. *See Hilligoss*, 649 N.W.2d at 148. The court found MDL introduced Northstar to Williams, Williams was not a "source of financing," and MDL was not entitled to a fee under the terms of the agreement. The court's findings are not clearly erroneous, and we affirm the court's decision dismissing MDL's breach of contract claim.

V

[¶ 52] MDL argues the district court erred in dismissing its quantum meruit and unjust enrichment claims against PICO Northstar Hallock.

A

[¶ 53] "Unjust enrichment is a broad, equitable doctrine which rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another." *Hayden v. Medcenter One, Inc.*, 2013 ND 46, ¶ 14, 828 N.W.2d 775. The doctrine applies in the absence of an express or implied contract. *Id.*

To recover under a theory of unjust enrichment one must prove five elements (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law. The essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.

*Lund v. Lund*, 2014 ND 133, ¶ 16, 848 N.W.2d 266. A third party may benefit from a contractual arrangement between others, but the third party has not necessarily been unjustly enriched unless the third party participated somehow in the transaction through which the benefit was obtained. *Lochthowe v. C.F. Peterson Estate*, 2005 ND 40, ¶ 10, 692 N.W.2d 120. A district court's determination of whether the facts support a finding of unjust enrichment is fully reviewable on appeal. *Lund*, at ¶ 16.

[¶ 54] The district court denied MDL's unjust enrichment claim, finding the PICO Defendants were not enriched by any of MDL's actions. The court found that the PICO Defendants contributed $60,000,000 to build the canola processing plant and were not enriched by putting their own money into the project and that the $100,000,000 used to finance the plant from ING was not related to Williams' introduction of PICO Holdings to Northstar. The court found Northstar took any liability for any finder's or broker's fees and it would be inequitable to require the PICO Defendants to pay any finder's fees. The court also found MDL did not provide any services to the PICO Defendants.

[¶ 55] MDL argues it satisfied all of the elements for unjust enrichment. MDL claims PICO Northstar Hallock was enriched and now owns a canola processing plant, MDL was impoverished by performing professional services without compensation, the enrichment and impoverishment are connected, nothing justifies MDL providing services without compensation, and MDL does not have an adequate remedy at law, because the district court found it was not entitled to payment under the terms of the agreement with Northstar.

[¶ 56] The evidence supports the district court's finding that the PICO Defen-

dants, including PICO Northstar Hallock, were not enriched by any of MDL's actions. MDL introduced Northstar to Williams. This act did not enrich any of the PICO Defendants. Williams did not provide any financing for the plant. The PICO Defendants did not receive a benefit from MDL which would be inequitable for the PICO Defendants to retain without paying for its value.

[¶ 57] MDL also failed to establish that it was impoverished. MDL had an agreement with Northstar to provide consulting services related to corporate finance and other financial service matters in connection with raising capital to fund the development and construction of a canola processing plant. The agreement required Northstar to pay a non-refundable engagement fee for its services for the term of the agreement and success and equity fees if MDL introduced Northstar to a source of financing for the plant. "When the impoverishment results from a valid contractual arrangement made by a party, the result is not contrary to equity and there has been no unjust enrichment." *BTA Oil Producers v. MDU Res. Group, Inc.*, 2002 ND 55, ¶ 23, 642 N.W.2d 873; *see also Lochthowe*, 2005 ND 40, ¶ 10, 692 N.W.2d 120; *Apache Corp. v. MDU Res. Group, Inc.*, 1999 ND 247, ¶ 14, 603 N.W.2d 891 (explaining unjust enrichment in cases with complicated transactions involving multiple parties). MDL was paid for its services under the terms of its agreement with Northstar, and MDL has not established it was impoverished.

[¶ 58] We conclude the district court did not err in deciding MDL failed to prove its unjust enrichment claim against the PICO Defendants.

**B**

[¶ 59] MDL argues it also satisfied all of the elements for its quan-

tum meruit claim against PICO Northstar Hallock. "Quantum meruit is an equitable action in which the law implies a promise to pay for the reasonable value of services furnished." *Hayden*, 2013 ND 46, ¶ 22, 828 N.W.2d 775. To prevail on a quantum meruit claim, "the claimant must establish the recipient accepted benefits under circumstances which would reasonably notify the recipient that the claimant had an expectation of payment for the services rendered." *Id.* The district court denied MDL's claim, finding MDL did not provide any services to the PICO Defendants, MDL's agreement for compensation was with Northstar, and Northstar agreed to pay all outstanding fees that may be owed. We conclude the district court did not err in denying MDL's claim for quantum meruit.

## VI

[¶ 60] Northstar argues the district court erred in dismissing its tort claims against Hayden. Northstar claims Hayden sued Northstar in federal court in New York, Northstar raised the same tort claims in that action as it raised in this action, and the district court improperly gave collateral estoppel effect to the New York federal court's interlocutory order dismissing Northstar's tort claims. Northstar contends a decision must be final and appealable for collateral estoppel to apply and bar relitigation of a fact or issue.

[¶ 61] Whether collateral estoppel applies is a question of law, which is fully reviewable on appeal. *Holkesvig v. Grove*, 2014 ND 57, ¶ 11, 844 N.W.2d 557. "'Collateral estoppel, or issue preclusion, forecloses relitigation of issues of either fact or law in a second action based on a different claim, which were necessarily litigated, or by logical and necessary implication must have been litigated, and decided in the prior action.'" *Id.* at ¶ 12 (quoting

*Ungar v. North Dakota State Univ.*, 2006 ND 185, ¶ 11, 721 N.W.2d 16). Only parties or their privies are bound by the prior proceedings. *Holkesvig*, at ¶ 12. We have said a four-part test should be applied to determine whether collateral estoppel bars relitigation of a fact or issue involved in an earlier lawsuit: "'(1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?'" *Silbernagel v. Silbernagel*, 2011 ND 140, ¶ 18, 800 N.W.2d 320 (quoting *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 384 (N.D.1992)).

[¶ 62] In deciding the parties' motions for summary judgment, the district court granted Hayden's motion and dismissed Northstar's tort claims. The court found the New York federal district court dismissed Northstar's tort claims in an action brought by Hayden, the tort issues in the federal case were identical to the tort issues presented in the current case, the federal court's dismissal of the claims with no right to replead was a final judgment on the merits, Northstar was involved in both actions, and Northstar was given a fair opportunity to be heard in the federal action. The court concluded Northstar was collaterally estopped from asserting the tort claims against Hayden.

[¶ 63] Northstar contends the court erred in finding collateral estoppel applied in this case, because the New York court's decision was not a final judgment. This Court has said "a judgment ordinarily is considered final if it is not 'tentative, provisional, or contingent and represents the completion of all steps in the adjudica-

tion of the claim by the court, short of any steps by way of execution or enforcement....'" *Westman v. Dessellier,* 459 N.W.2d 545, 547 (N.D.1990) (quoting *Restatement (Second) of Judgments* § 13 comment b (1982)). The New York court dismissed Northstar's tort claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. "The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'" *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). It is a final decision for purposes of res judicata or collateral estoppel. *Sabatino v. Capco Trading, Inc.,* 27 A.D.3d 1019, 813 N.Y.S.2d 237, 238 (N.Y.App.Div.2006). The New York court dismissed Northstar's claims without leave to replead because the court stated "it is abundantly clear that further amendment to the pleadings is futile." The New York court's decision was not tentative, provisional, or contingent and represented the completion of all steps in the adjudication of Northstar's tort claims by that court. *Cf. Westman,* at 547 (a pending appeal does not preclude a court from giving res judicata effect to the appealed decision). The court stated it would not consider the matter further and dismissed Northstar's claims with prejudice. The New York court's decision was a final decision for collateral estoppel purposes. We conclude the district court did not err in dismissing Northstar's tort claims.

## VII

[¶ 64] Northstar argues the district court erred in denying its request for attorney's fees against Hayden under N.D.C.C. § 28–26–31, because the allegations in Hayden's pleadings were untrue and were not made in good faith. Northstar contends the court found Williams' testimony was untrue and Williams believed and intended that he was acting on

Oppenheimer's behalf when he introduced PICO Holdings to Northstar, and therefore the position Hayden set out in its pleadings was a lie and attorney's fees should have been awarded.

[¶ 65] Section 28–26–31, N.D.C.C., authorizes a court to award attorney's fees and other expenses when pleadings are not made in good faith:

> Allegations and denials in any pleadings in court, made without reasonable cause and not in good faith, and found to be untrue, subject the party pleading them to the payment of all expenses, actually incurred by the other party by reason of the untrue pleading, including a reasonable attorney's fee, to be summarily taxed by the court at the trial or upon dismissal of the action.

The district court has discretion to award attorney's fees under N.D.C.C. § 28–26–31, and the court's decision will not be reversed on appeal unless the court abuses its discretion. *Hartleib v. Simes,* 2009 ND 205, ¶ 44, 776 N.W.2d 217. "Although an award of attorney's fees and costs under Section 28–26–31 is discretionary, exercise of that discretion must be based upon evidence that the pleadings were made without reasonable cause and not in good faith, and are subsequently found to be untrue." *Peterson v. Zerr,* 477 N.W.2d 230, 235 (N.D.1991).

[¶ 66] Northstar requested attorney's fees against Hayden, MDL, and Irish under N.D.C.C. § 28–26–01(2), for frivolous claims, and N.D.C.C. § 28–26–31, for pleadings not in good faith. The district court denied Northstar's request. The court found Hayden's claims were not frivolous, because the claims raised significant factual issues and survived summary judgment. The court also found the pleadings were not made in bad faith.

[¶ 67] Northstar contends the court denied its request for attorney's fees under N.D.C.C. § 28–26–31, despite finding Williams' testimony and Hayden's pleading were untrue, because Hayden's claims survived summary judgment. However, the court denied Northstar's request for attorney's fees under N.D.C.C. § 28–26–01(2), finding Hayden's claims were not frivolous and survived summary judgment. The court denied Northstar's claim for attorney's fees under N.D.C.C. § 28–26–31, finding the pleadings were not made in bad faith.

[¶ 68] Hayden alleged in its pleadings that Williams was an agent of Hayden USA and at all times accurately represented his status. Williams testified numerous times during the trial that he was acting on behalf of Hayden USA, but the court found the preponderance of the evidence "suggests that Williams was acting on his employer Oppenheimer & Co.'s behalf when he introduced PICO Holdings to Northstar." The court further explained the evidence supporting its finding. Although the court found some of Williams' testimony was not credible, there was conflicting evidence, the court found the preponderance of the evidence suggested Williams was acting on Oppenheimer's behalf, and the court found the pleadings were not made in bad faith. The court did not act in an arbitrary, unreasonable, or unconscionable manner. We conclude the court did not abuse its discretion.

## VIII

[¶ 69] We have considered all remaining issues or arguments, and we conclude they are either unnecessary to our decision or are without merit. We affirm the district court's judgment.

[¶ 70] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, and ALLAN L. SCHMALENBERGER, JJ., concur.

[¶ 71] The Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of KAPSNER, J., disqualified.

CROTHERS, Justice, specially concurring.

[¶ 72] I concur with the result and most of the reasoning in the majority opinion. I write separately because, in my view of the law, there is no such thing as "[a] tort action for fraud." Majority opinion at ¶ 27. For the reasons I articulated in *Erickson v. Brown*, 2008 ND 57, ¶¶ 59–93, 747 N.W.2d 34 (Crothers, J., concurring in part and dissenting in part), deceit is a tort claim and fraud is a claim for avoidance of a contract. Had this difference been clear in our modern cases, I presume counsel would have pleaded a tort action for deceit rather than a contract avoidance action for fraud, and the district court's and this Court's analysis ultimately would obtain their same results.

[¶ 73] Daniel J. Crothers